Carolyn BRADLEY, Plaintiff–Appellant,

v.

**TRIANGLE AMOCO, INC. and William Downs, Defendants–Appellees.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

March 17, 1993.

Application for Permission to Appeal Denied by Supreme Court
July 6, 1993.

Joseph M. Dalton, Jr., Eason, Lawson, Fishburn & Dalton, Nashville, for plaintiff/appellant.

M. Allen Ehmling, Edward B. Strong, McClellan, Powers, Ehmling & Dix, Gallatin, for defendants/appellees.

## OPINION

LEWIS, Judge.

This is an appeal by plaintiff/appellant, Carolyn Bradley, from the judgment of the trial court entered on the jury's verdict in favor of the defendants/appellees and the dismissal of her suit.

The pertinent facts are as follows:

Plaintiff filed this suit after she was injured under circumstances which she alleged were caused by the negligence of the defendants, Triangle Amoco, Inc. and its employee, William Downs.

Plaintiff's vehicle was parked at the defendant's Triangle Amoco, Inc. (Triangle) station and, when she attempted to start the vehicle, it would not start. Defendant, William Downs, who was employed by Triangle, attempted to assist plaintiff in starting her automobile. When Mr. Downs was unsuccessful in starting the automobile, he got out of the automobile, walked to the front, and raised the hood to check the choke. He then got back into the automobile and attempted to start it again, but was unsuccessful. He put the transmission in neutral and attempted again to start it, and was successful. He returned the shift lever to the park position, got out of the automobile with the motor continuing to run, went to the front of the automobile and began replacing a wing nut on the top cover of the air filter. The car suddenly and unexpectedly began to move in reverse. It hit plaintiff, who was standing behind the automobile, knocked her down, and continued on into East Main Street. Mr. Downs ran after the vehicle and stopped it in East Main Street. He got into the vehicle, put the brakes on, put the transmission in drive and drove the vehicle back onto Triangle's lot.

Mr. Downs testified that to the best of his knowledge the gear selector was in reverse when he got into the vehicle in East Main Street to drive it back onto Triangle's lot. He also testified that he was sure he had put the plaintiff's vehicle in park before getting out of it to replace the air filter cover. On cross-examination, Mr. Downs admitted that he had earlier stated that he had put the vehicle in park before exiting it "as far as I know."

The investigating officer from the Gallatin Police Department testified that when he arrived at the scene the plaintiff was lying on the ground, and that a gasoline pump had been knocked over. He was unable to talk to the plaintiff because he was fearful she would go into shock because of her pain. The investigating officer testified that Mr. Downs did not make any statement that the plaintiff's vehicle had gone into reverse, and if he had made any statement, that information would have been included in his report.

At trial, the defendants contended that there was a defect in plaintiff's vehicle which caused it to jump into reverse and that Mr. Downs did not negligently leave the car in neutral or otherwise negligently cause it to back over the plaintiff.

There is evidence from a previous owner of the vehicle that it had been in her family for some twenty years before she sold it to plaintiff's son-in-law in 1989, that it was in good condition when sold and had never required transmission work of any kind, and that there had been no problems with the gear selector. She further testified that, in the year before the vehicle was sold, the witness had driven it and that her

aunt had owned the vehicle for almost twenty years and she was unaware of any problems existing in the vehicle during her aunt's ownership. There is also evidence that there had not been any problems in starting the car in park, nor was there any play in the gear selector.

Following the accident the vehicle was driven from Triangle's place of business and there was no problem with the gear shift at that time. The vehicle did not "roll []" after it was parked and there was no difficulty in putting the gear shift in park. Following the accident in the instant case, the car was driven for some twenty-one months without any problems with the transmission or the gear shift.

In August 1991, the vehicle was involved in a collision and was "totaled." It was not started again until January 1992, when the defendants' expert examined the vehicle. This was two years and one month after the accident in the instant case.

Following the accident in which the vehicle was "totaled", the vehicle had to be towed and the belts had to be cut before the engine would start. Therefore, the engine could only be run a few minutes at a time.

Plaintiff testified that her son-in-law had given her the car in November 1989 and that she had no problems with the vehicle in the short time that she drove it.

A discovery deposition was taken by plaintiff of Greg Caulton, defendants' expert witness. Mr. Caulton stated in the discovery deposition that he examined the vehicle two years and one month following the instant accident and at that time gave two possible theories for the defendant's contention that the car had simply "jumped" into reverse. In his discovery deposition, his first theory was that there had been a misplaced cross-shaft in the transmission linkage. His second theory was based on a bushing missing from the hole in which the cross-shaft was supposed to have been engaged. He testified that his opinions were based upon his examination of the external transmission linkage. He did not, in his discovery deposition, put forth the theory that all C–6 Ford transmissions had a manufacturing defect that would cause a car to "jump" into reverse from neutral. Several witnesses were called who testified on the issue of whether there was a defect in the transmission. The testimony of the several witnesses was in conflict.

At trial, Mr. Caulton changed his theory from the two given in his discovery deposition to a theory of a manufacturing defect. Plaintiff objected at the time this theory was offered on the basis that it was speculative and conjecture.

Mr. Caulton admitted that he had no personal knowledge to establish the existence in plaintiff's vehicle of the defect which he said existed and that this theory was contrary to his previous theories.

Plaintiff's first issue is: "Whether the verdict in this case was contrary to the preponderance of evidence."

The appellate courts of this state have consistently held that where there is material evidence to support the verdict of the jury, the verdict will not be disturbed. *Valentine v. Conchemco, Inc.*, 588 S.W.2d 871 (Tenn.App.1979). Rule 13(d), Tennessee Rules of Appellate Procedure provides in part: "Findings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict."

At oral argument, plaintiff conceded that this issue is not a proper issue in this Court. We agree, and find it to be without merit.

Plaintiff's second issue is:

Whether the court erred in admitting the testimony of the expert witness, Greg Caulton, called by the defendants, when the expert's opinion testimony was based upon conjecture and speculation which was obvious when said witness testified he had made no actual physical examination of the internal transmission linkage of the plaintiff's vehicle, but that he had the opportunity to do so.

Mr. Caulton, who was employed with Packer Engineering Company in Naperville, Illinois, was employed by the defendants to come to Sumner County and examine plaintiff's vehicle in January 1992, some

two years after the accident. Mr. Caulton had been informed prior to his inspection of the vehicle that it had been involved in a separate unrelated head-on collision some eighteen months following the instant accident. He found the vehicle in January 1992 to have damage to the front bumper and frame. The radiator had been pushed back into contact with the compressor for the air conditioning system but, according to Mr. Caulton, the engine had not been moved and the motor mounts were not damaged. Mr. Caulton had the car towed to Triangle's lot, where he had a battery put in the automobile, started it and drove it onto the grease rack. He spent some two to three hours examining the vehicle. Mr. Caulton testified that in plaintiff's vehicle he found a cross-shaft out of position which could cause the indicator and the gear shift to be "one gear off all the way through the range." Mr. Caulton also testified that another problem was the fact that another bushing was missing from the hole in which the cross-shaft was supposed to be engaged. He explained the significance of the missing bushing: "[I]t wasn't positively one notch off the way it was when I found it, but it had looseness such that you could put it in say reverse and it could go either side of reverse, part way into neutral and part way into park, and it would still be in reverse."

Mr. Caulton testified that in 1980 Ford Motor Company redesigned its C–6 transmissions to eliminate the problem of the transmission jumping from park to reverse. It was his testimony that the defect existed in all Ford C–6 transmissions from the time they were first used until 1980. The plaintiff's vehicle had a Ford C–6 transmission. Mr. Caulton described the problem as an internal design defect. It was Mr. Caulton's opinion that the vehicle "went into reverse because of the defect in the transmission linkage and the transmission." He testified that he changed his theory from those stated in his discovery deposition to the one introduced at trial as a result of having heard the testimony of previous drivers of the vehicle and the testimony of Randy Johnson, an employee at Triangle on the date of the accident. He also testified

that he had no way of knowing whether the missing bushing, which he felt remained the contributing factor, had been missing from the hole in which the cross-shaft was supposed to have been engaged at the time of the accident which injured plaintiff. He felt that it could have fallen out at the time the cross-shaft became misplaced. Plaintiff insists that Mr. Caulton's testimony is based upon conjecture and speculation.

■ Defendants defended upon the theory that there was a defect in the internal transmission linkage of the plaintiff's vehicle. It was, therefore, their burden to establish the existence of the defect. *See, Parker v. Prince*, 656 S.W.2d 391, 398 (Tenn.App.1983). The burden is on the defendant here to prove a defect in the transmission if defendants are to be excused from their purported negligence. Here, defendants' expert witness simply testified that there was a defect which existed in all Ford C–6 transmissions and he saw no need to confirm that the plaintiff's vehicle was defective.

■ Mr. Caulton's bare assertion, that all C–6 Ford transmissions manufactured prior to 1980 were defective and that, since plaintiff's vehicle had a Ford C–6 transmission manufactured before 1980 it followed that it was defective, is not sufficient to take his testimony out of the realm of speculation and conjecture. Allowing this testimony, received in the fashion it was in the instant case, was error.

■ Mr. Caulton's testimony was erroneously admitted and, under the facts and circumstances, was not harmless. Defendants argue that it was not necessary for the testimony of the expert witness to be based "entirely upon observation". In support of this, they cite *Valentine v. Conchemco, Inc.*, 588 S.W.2d at 875, wherein this Court stated: "[t]he fact that the expert's opinion was not based entirely upon observation, standing alone, does not reduce his testimony to speculation. Testimony by an expert witness may be premised upon his or her personal observation or upon facts presented in a hypothetical question." *Id.* at 875. We agree with this

statement. However, as we have stated, the expert in this case did not attempt to show there was a manufacturing defect in the transmission of the vehicle that backed over plaintiff. He simply stated that he saw no reason to inspect the vehicle's transmission since all C–6 transmissions manufactured prior to 1980 were defective. There is no evidence in the record to support such a bald assertion. This statement standing alone is not sufficient to carry the defendants' burden of showing a manufacturing defect. This issue is sustained.

Plaintiff has presented several other issues which we pretermit because of our holding under this issue.

The judgment of the trial court is therefore reversed in all respects and the cause remanded to the trial court for a new trial upon all issues and for any further necessary proceedings. Costs on appeal are assessed to the defendants/appellees.

CANTRELL and KOCH, JJ., concur.